**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENERGY TRANSFER L.P., <br><br> Plaintiff, <br><br> v. <br><br> JOHN J. FICARA *et al.*, <br><br> Defendants. | Civil Action No. 21-3185 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on Plaintiff Energy Transfer L.P.'s ("Energy Transfer") motion for summary judgment. (ECF No. 26.) Defendants John J. Ficara and Elizabeth Maher Muoio ("Defendants") opposed and filed a cross-motion to dismiss (ECF No. 34), to which Energy Transfer replied (ECF No. 35). The Court has carefully considered the parties' submissions and decides the motions without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' cross-motion, denies Energy Transfer's motion as moot, and dismisses this case under the tax comity doctrine.

**I. BACKGROUND**

  In this case, Energy Transfer challenges parts of New Jersey's partnership tax collection regime under the Dormant Commerce Clause of the U.S. Constitution. Energy Transfer is a publicly traded limited partnership that operates in and earns income from New Jersey. (Pl.'s Statement of Undisputed Material Facts ("PSUMF") ¶¶ 1-3, ECF No. 26-2.) The company is owned by "tens of thousands of partners," roughly six percent of which "have [a] physical nexus with New Jersey." (*Id.* ¶ 2.)

Because Energy Transfer earns income in New Jersey, it pays taxes under New Jersey's partnership tax regime. (Defs.' Statement of Undisputed Material Facts ("DSUMF") ¶ 7, ECF No. 34-4.) By statute, Energy Transfer must pay a "filing fee" of $150 per partner, capped at $250,000 (the "Partnership Fee"). N.J. Stat. Ann. § 54A:8-6(b)(2)(A) (West 2022).[1] The statute assesses the $150 Partnership Fee against all partners in or having a physical nexus with New Jersey; for all other partners, the statute apportions the Partnership Fee based on a "corporate allocation factor." *Ferrellgas Partners, L.P. v. Dir., Div. of Tax'n*, No. A-3904-18T1, 2021 WL 115643, at *2 (N.J. Super. Ct. App. Div. Jan. 13, 2021) (citation omitted). Apportioned Partnership Fees are also capped at $250,000. *See id.* So, for example, if a partnership with operations in New Jersey had 1,000 New Jersey resident partners and 500 nonresident partners (who also had no physical nexus to New Jersey), the partnership would pay 1,000 times $150, plus 500 times $150, times the fractional corporate allocation factor—all capped at $250,000. *See id.* (providing examples).

The New Jersey Legislature enacted the Partnership Fee as part of the broader Business Tax Reform Act of 2002, which sought to "address large and multi-national corporations that earn billions in New Jersey source income but pay minimal taxes." *Ferrellgas Partners*, 2021 WL 115643, at *1 (citation omitted). More specifically, the Partnership Fee comprised "a revenue

---

[1] The relevant statutory language is as follows:

> Each entity classified as a partnership for federal income tax purposes, other than an investment club, having any income derived from New Jersey sources, including but not limited to a partnership, a limited liability partnership, or a limited liability company, that has more than two owners shall at the prescribed time for making the return required under this subsection make a payment of a filing fee of $150 for each owner of an interest in the entity, up to a maximum of $250,000.

N.J. Stat. Ann. § 54A:8-6(b)(2)(A).

stream that captures enforcement and processing costs that New Jersey incurs from processing the vast network of limited liability companies and partnerships." *Id.* Since 2016, funds from the Partnership Fees were deposited into New Jersey's Property Tax Relief Fund, "a constitutionally established fund whose proceeds . . . 'reduc[e] or offset[] property taxes.'" (DSUMF ¶¶ 22-23 (quoting N.J. Const. art. VIII, § I, ¶ 7).) Defendants report that, in 2021, proceeds from the Property Tax Relief Fund were used to fund "payments of direct aid to school districts and municipalities," "employee and retirement benefits," and "statutory programs providing aid to individuals." (*Id.* ¶ 25.)

As a partnership with thousands of partners around the country, Energy Transfer owes $250,000 for the 2021 tax year. (PSUMF ¶¶ 8-9.) Energy Transfer has not paid the assessed 2021 Partnership Fee. (*Id.* ¶ 12.) Instead, it has launched at least five lawsuits, claiming that the Partnership Fee is unconstitutional under the Dormant Commerce Clause. Energy Transfer filed four of those in state tax court; the fifth is the instant suit. (DSUMF ¶¶ 11, 18.) The Court understands that all four state court actions are currently stayed. (Pl.'s Resp. to Defs.' SUMF ¶ 17, ECF No. 35-7.)

The Court also understands that the state courts have litigated this issue before. In *Ferrellgas*, the New Jersey Appellate Division affirmed the tax court's ruling that the Partnership Fee did not violate the Dormant Commerce Clause. 2021 WL 115643, at *10. It ruled that the plaintiff partnership failed to "present a prima facie case of disparate impact or other form of discrimination" that violated the Dormant Commerce Clause. *Id.* The court reasoned that the Partnership Fee "funds the cost of the [Tax] Division's processing and reviewing partnership and partner returns filed in New Jersey to track their New Jersey source income"—in other words, "purely intrastate activity." *Id.* The court further concluded that the tax court "was not required to

apply the internal or external consistency tests or to determine whether the [Partnership Fee] amount is fairly related to the services provided by the State" because the statute is "facially neutral." *Id.* Following the plaintiff partnership's appeal, the New Jersey Supreme Court denied certification, and the U.S. Supreme Court denied certiorari. *Ferrellgas Partners, L.P. v. Dir., Div. of Tax'n*, 251 A.3d 760 (N.J. 2021); *Ferrellgas Partners, L.P. v. Dir., Div. of Tax'n*, 142 S. Ct. 1440 (U.S. 2022).

Even with the Appellate Division's ruling, Energy Transfer maintains that the Partnership Fee violates the Dormant Commerce Clause and that clause's internal consistency test. (*See generally* Pl.'s Moving Br. 6-15, ECF No. 26-1.) Energy Transfer seeks declaratory relief and a permanent injunction to enjoin Defendants from collecting the Partnership Fee from the partnership. (*Id.* at 15-19.) In response, Defendants assert (among other arguments) that the Court lacks jurisdiction to hear the case under the Tax Injunction Act, 28 U.S.C. § 1341, or should dismiss this case under the tax comity doctrine. (*See generally* Defs.' Opp'n Br. 12-26, ECF No. 34-3.) Energy Transfer rebuffs that neither the Tax Injunction Act nor the tax comity doctrine apply because the Partnership Fee is not a tax but a filing fee. (*See generally* Pl.'s Reply Br. 5-19, ECF No. 35.)

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute

of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary

judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III. **DISCUSSION**

Before the Court turns to the merits of Energy Transfer's Dormant Commerce Clause challenge, it must assure itself of its jurisdiction. Defendants argue that the Tax Injunction Act bars the Court's jurisdiction and that the tax comity doctrine favors prudential dismissal. The Court agrees that the tax comity doctrine warrants dismissal. It thus need not consider whether the Tax Injunction Act separately forecloses suit in federal court. *See Levin v. Com. Energy, Inc.*, 560 U.S. 413, 432 (2010) ("Because we conclude that the comity doctrine justifies dismissal of respondents' federal-court action, we need not decide whether the [Tax Injunction Act] would itself block the suit." (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299, 301 (1943))).

#### A. The Tax Comity Doctrine

The tax comity doctrine has not often appeared at this Court's doorstep. The Supreme Court recently reaffirmed the doctrine in *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). There, independent marketers of natural gas sued the Tax Commissioner of Ohio, alleging that the Ohio tax code discriminatorily afforded tax exemptions to other commercial producers of natural gas. *Levin*, 560 U.S. at 418-19. On appeal to the Supreme Court, the Court recounted that comity concerns "counsel[] lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Id.* at 421. "Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* That's so, the Court reasoned, because "the several States chiefly rely [on taxes] to obtain the means to carry on their respective governments." *Id.* at 421-22 (quoting *Dows v. Chicago*, 78 U.S. 108, 110 (1870)). As to comity's scope, the Court cautioned that federal courts should exercise restraint when

"interfer[ing] . . . with the fiscal operations of the state governments." *Id.* (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)).

Applying those precepts, the Court concluded that comity warranted dismissal of the action. *Id.* at 432. The Court assessed three factors in reaching that conclusion:

> First, respondents seek federal-court review of commercial matters over which Ohio enjoys wide regulatory latitude; their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny. Second, while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position. Third, the Ohio courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences . . . .

*Id.* at 431-32. "[I]n combination," the Court deduced, these factors "demand[ed] deference to the state adjudicative process." *Id.* at 432. Otherwise, "the [C]ourt would engage in the very interference in state taxation the comity doctrine aims to avoid." *Id.* at 429 (citing *State R.R. Tax Cases*, 92 U.S. 575, 614-15 (1976)).

In the wake of *Levin*, the Third Circuit has not yet had occasion to formally adopt the Supreme Court's reasoning in a published opinion. An unpublished opinion, however, is persuasive authority for this Court to follow. In *Z&R Cab, LLC v. Philadelphia Parking Authority*, the Third Circuit considered whether Pennsylvania's Parking Authority Law (the "Law") violated § 1983. 616 F. App'x 527, 529 (3d Cir. 2015). The Law imposed annual fees on taxi-cab operators that helped fund the regulatory activities of the Philadelphia Parking Authority (the "Authority"). *Id.* A group of taxi-cab companies sued the Authority, but the district court dismissed the suit for lack of subject matter jurisdiction. *Id.* The Third Circuit disagreed, ruling that the district court had federal question jurisdiction. *Id.* at 530.

But that didn't end the case. Citing *Levin*, the Third Circuit reasoned that "under principles of comity, deference should be given to state courts to remedy constitutional violations arising from state revenue-raising laws if adequate state remedies exist." *Id.* at 530-31. It noted, consistent with *Levin*, that district courts should take a broad view of comity's constraint. *See id.* at 531 (recognizing that *Levin* spoke of comity as applying to "economic legislation," "tax classifications or other legislative prescriptions," and "a [s]tate's allocation of benefits or burdens" (quoting 560 U.S. at 426-27) (alteration in original)). The Third Circuit went on to note that the *Levin* Court analyzed the as-mentioned factors and whether "more than one potential remedy could adequately redress the alleged constitutional defect." *Id.* at 531 n.8. All told, the Third Circuit remanded to the district court to consider whether "it should refrain from adjudicating . . . under principles of comity." *Id.* at 531.[2]

Heeding the Third Circuit's logic, several district courts have dismissed federal-court suits under the tax comity doctrine. For example, one court declined to enjoin the Pennsylvania Department of Revenue's program that helped identify taxes owed by certain nonresident guild members. *Online Merchs. Guild v. Hassell*, No. 21-369, 2021 WL 2184762, at *1 (M.D. Pa. May 28, 2021). The court cited *Levin* and *Z&R Cab*, conducting the multi-factor comity test demanded by both courts. *See id.* at *6-8. Although a "close call," the court concluded that, "[u]ltimately," it was "guided by the Third Circuit's and Supreme Court's instruction that 'deference should be

---

[2] Other circuits have also adopted the reasoning of *Levin* in published opinions. *See Joseph v. Hyman*, 659 F.3d 215, 217 (2d Cir. 2011) ("Pursuant to *Levin v. Commerce Energy, Inc.*, comity concerns counsel against federal court adjudication of plaintiffs' claims [challenging New York's state tax schemes]."); *Coors Brewing Co. v. Mendez-Torres*, 678 F.3d 15, 22-25, 30 (1st Cir. 2012) ("*Levin* applies and requires dismissal of this federal case in favor of resolution of Coors's claims in the courts of Puerto Rico . . . ."); *City of Fishers v. DIRECTV*, 5 F.4th 750, 754-57 (7th Cir. 2021) ("*Levin* . . . counsel[s] that state court is the appropriate forum for review of federal challenges to state taxes.").

given to state courts to remedy constitutional violations arising from state revenue-raising laws if adequate state remedies exist.'" *Id.* at *7, *9 (quoting *Z&R Cab*, 616 F. App'x at 530-31). Other courts have reasoned similarly. *E.g.*, *Farneth v. Wal-Mart Stores, Inc.*, No. 13-1062, 2013 WL 6859013, at *2-4 (W.D. Pa. Dec. 30, 2013) (remanding tax case "on the basis of comity considerations"); *Sharifi v. East Windsor Twp.*, No. 21-7965, 2022 WL 13847200, at *4 (D.N.J. Oct. 24, 2022) ("Even if the Court were not deprived of jurisdiction by statute, [p]laintiff's concurrent suit in Tax Court implicates general principles of comity, under which federal courts defer to state courts in certain instances.").

Putting all these cases together, the Court agrees with Defendants that Energy Transfer's challenge raises the same comity concerns present in *Levin*, *Z&R Cab*, and the like. As in *Levin*, Energy Transfer challenges a state tax scheme as discriminatorily taxing nonresident partnerships and partners. That tax scheme has raised significant revenue for New Jersey—as Defendants assert, in 2021 alone, the Partnership Fee collected over $58 million for New Jersey. (DSUMF ¶ 21.) And the State used those funds to provide (among other benefits) tax relief to property owners throughout New Jersey. (*Id.* ¶ 25.) In other words, the New Jersey Legislature wrapped up the Partnership Fee in the State's system of "taxation that [it] chiefly rel[ies] [on] to obtain the means to carry on [its] respective government[]." *Levin*, 560 U.S. at 421-22 (citation omitted). Any injunction from this Court would therefore necessarily interfere with New Jersey's fiscal operations and necessarily implicate the tax comity doctrine. *See Matthews v. Rodgers*, 284 U.S. 521, 525-26 (1932).

Energy Transfer resists *Levin*'s application, proffering that the case applies only to traditional taxes and not non-tax fees in tax schemes. (*See* Pl.'s Moving Br. 23-25.) But *Levin* was clear that comity concerns were not so circumscribed. For one, the Supreme Court characterized

9

the tax comity doctrine as "more embracive" than its jurisdictional counterpart in the Tax Injunction Act. *Levin*, 560 U.S. at 424. It also directed courts to "show[] a proper reluctance to interfere" not just with traditional taxes but with "the fiscal operations of the state governments." *Id.* at 422 (citation omitted); *see also Z&R Cab*, 616 F. App'x at 531 ("[I]n discussing its preference for permitting states to fashion an appropriate remedy for challenges to state fiscal laws, . . . [the Supreme Court] suggest[ed] that this type of comity applies outside of tax cases."). Indeed, the Seventh Circuit rejected a similar challenge to an Indiana law that imposed franchise fees on video service providers. *See DIRECTV*, 5 F.4th at 755 (noting that the challenger's concession that "the fee . . . —which is most often deposited in the government units' general accounts—can be understood as a tax for *Levin* purposes" was "in no way surprising" because "the franchise fee . . . yields revenue for municipalities in Indiana" (citations omitted)). The Court thus comfortably concludes that a tax comity analysis is appropriate.[3]

### B. Application of the Doctrine

Which brings the Court to the question of what that analysis is. Here again, *Levin* and *Z&R Cab* provide helpful guidance. *First*, the Court should consider whether Energy Transfer "seek[s] federal-court review of commercial matters over which [New Jersey] enjoys wide regulatory latitude" and whether Energy Transfer's suit involves "any fundamental right or classification that attracts heighted judicial scrutiny." *Levin*, 560 U.S. at 431. Energy Transfer flunks this factor. By

---

[3] The Court also rejects Energy Transfer's reliance on the First Circuit's decision in *American Trucking Ass'ns, Inc. v. Alviti*, 944 F.3d 45 (1st Cir. 2019). (*E.g.*, Pl.'s Reply Br. 16, ECF No. 35.) There, the First Circuit concluded that the Rhode Island Department of Transportation's newly created tolls on commercial truckers were not taxes under the tax comity doctrine. *Alviti*, 944 F.3d at 57. But that determination turned on a bevy of federal authority that concluded that tolls were not taxes under the Tax Injunction Act. *See id.* at 56-57. Further, much of the tolls' assessment and collection fell under the purview of the Rhode Island Department of Transportation, not Rhode Island's tax administrators. *See id.* at 55-56. That diverges from the facts here, as the Partnership Fee is part of New Jersey's tax regime and falls under the discretion of New Jersey's tax agency.

its terms, the statute imbues the State with the power to collect the Partnership Fee and enforce that collection through the State Uniform Tax Procedure Law. N.J. Stat. Ann. § 54:8-6(b)(2)(C); *see also id.* § 54:8-6(a) ("The director may require any person, by regulation or notice served upon such person, to make such returns, render such statements, or keep such records, as the director may deem sufficient to show whether or not such person is liable under this act for tax or for collection of tax."). The State Uniform Tax Procedure Law grants the State, by definition, wide regulatory latitude: "[t]he commissioner is hereby authorized and empowered to carry into effect the provisions of this subtitle, and in pursuance thereof may make and enforce such rules and regulations as he may deem necessary." *Id.* § 54:50-1. Unquestionably then, this Court would be wading into commercial matters of great regulatory discretion by New Jersey's tax agency.

In addition, Energy Transfer fails to identify any fundamental right or classification warranting strict scrutiny. As *Levin* made clear, a Dormant Commerce Clause challenge does not implicate a fundamental right. 560 U.S. at 426, 431. Nor has Energy Transfer identified any caselaw showing that the statute facially classifies partnerships or that courts analyze challenges by nonresident-majority partnerships burdened by state tax regimes through the lens of heightened judicial scrutiny. *See Coors Brewing Co.*, 678 F.3d at 24. These failures further counsel in favor of dismissal.

*Second*, the Court considers if Energy Transfer seeks "federal-court aid in an endeavor to improve [its] competitive position." *Levin*, 560 U.S. at 431. It does. It couches its motion as one of discrimination against multistate businesses—that is, Energy Transfer seeks to improve its position against intrastate businesses. For example, it poses the following hypothetical: "[I]f every State enacted a levy identical to the one at issue, would a person doing business in multiple States pay more, in the aggregate, than a person conducting the same business entirely within a single

11

State?" (Pl.'s Moving Br. 8-9 (citation omitted); *see also DIRECTV*, 5 F.4th at 756 ("If streaming platforms, like cable companies, are compelled to pay franchise fees under the Act, that requirement will reduce profits and, in turn, may affect the price of video streaming services to consumers.").) The Court thus weighs this factor in favor of dismissal.

*Third*, the Court considers whether New Jersey courts "are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences." *Levin*, 560 U.S. at 431-32. The Court need not look far. Specialized New Jersey tax courts have already begun providing answers to Dormant Commerce Clause challenges. *See Ferrellgas*, 2021 WL 115643, at *10 ("[W]e affirm substantially for the reasons expressed by Tax Court Judge Mala Sundar in her well-reasoned and comprehensive forty-one-page December 7, 2018 opinion."). Energy Transfer has no doubt recognized the expertise of New Jersey tax courts, as it has filed four challenges to the Partnership Fee there.

In addition, state courts are better able to fashion remedies to New Jersey's taxation structure than their federal counterparts. That's especially so because the remedies Energy Transfer can seek in this Court are limited. Congress placed one limit in the Tax Injunction Act, curtailing this Court's ability to effect relief that diminishes state revenues. *Levin*, 560 U.S. at 428 ("Federal judges, moreover, are bound by the [Tax Injunction Act]; absent certain exceptions, the Act precludes relief that would diminish state revenues, even if such relief is the remedy least disruptive of the state legislature's design."); *Joseph*, 659 F.3d at 220 ("[B]ecause the [Tax Injunction Act] prevents federal courts from eliminating a source of tax revenue, federal courts are limited in the remedies they may grant when deciding a challenge to a state taxation scheme."). Nor can this Court remand for state-court input because "federal tribunals lack authority to remand to the state court system an action initiated in federal court." *Levin*, 560 U.S. at 428. Energy

Transfer no doubt recognizes these established limits on the Court's remedial power. It contends at length, for example, that the Tax Injunction Act does not apply because the Partnership Fee isn't a tax. And it seeks an all-or-nothing declaration and injunction that the Partnership Fee is unconstitutional, the only real remedies available to it in federal court.[4] All to say that these limits do not exist in New Jersey courts, which are free to fashion broader remedies.

*Finally*, and for similar reasons, the Court concludes that "more than one potential remedy could adequately redress the alleged constitutional defect" in New Jersey courts. *Z&R Cab*, 616 F. App'x at 531 n.8. "State courts . . . have greater leeway to avoid constitutional holdings by adopting 'narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.'" *Levin*, 560 U.S. at 428 n.7 (quoting *Moore v. Sims*, 442 U.S. 415, 429-30 (1979)). Indeed, should New Jersey tax courts conclude that the Partnership Fee is somehow infirm, they could rework the apportionment of the Partnership Fee to be fairer to multistate partnerships. Because narrower remedies exist in state court, the Court finds dismissal of Energy Transfer's suit in federal court proper.

## IV.   CONCLUSION

The tax comity doctrine justifies dismissal of Energy Transfer's suit. Energy Transfer may bring its constitutional challenges in state court. An appropriate order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[4] Energy Transfer tries to limit its relief by contending that it seeks an as-applied ruling. (*See* Pl.'s Reply Br. 17.) The Court is not convinced by that limit. Any ruling from this Court could have a preclusive effect on future litigation involving Energy Transfer, including the four state-court challenges. *See Online Merchs. Guild*, 2021 WL 2184762, at *8. Moreover, this Court's ruling would constitute persuasive authority for any facial challenge to the Partnership Fee and future as-applied challenges by multistate partnerships.